The BOEING COMPANY, Appellant,

v.

ZONING HEARING BOARD OF RIDLEY TOWNSHIP, 409 Smiley, Inc., Wilmarlie, Inc., 291, Inc., Namar, Inc. and MGMRP, Inc.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2002.
Decided April 29, 2003.

1. 52 Pa.Code § 5.102(a).

2. 66 Pa.C.S. § 1103(a).

Elizabeth U. Witmer, Wayne, for appellant.

Rocco P. Imperatrice, III, Newtown Square, for appellees, 409 Smiley, Inc., Namar, Inc. and Wilmarlie, Inc.

Peter J. Rohana, Media, for appellee, Twp. of Ridley.

BEFORE: COLINS, President Judge, COHN, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge COHN.

The instant case arises from the Boeing Company (Boeing) challenging the validity of actions taken by the Ridley Township Board of Supervisors (Township) to resolve a number of related lawsuits between the Township and the operators of an adult entertainment facility (AEF) named Smileys.[1] Boeing alleges that the Township engaged in spot zoning and contract zoning in the manner by which it settled these cases. The Zoning Hearing Board of Ridley Township (Board) denied Boeing's appeal, as did the Court of Common Pleas of Delaware County (trial court). We affirm the trial court order.

For several years, Smileys had been operating as an existing, nonconforming use, an AEF in a residential district of the community. In 1994, the Township enacted an Adult Entertainment Ordinance (Ordinance) which was codified within the Township zoning code. The Ordinance authorized AEFs in industrial districts provided the operators first obtained a special exception. Additionally, the Ordinance required AEF operators to obtain a permit from the Zoning Officer.

---

1. The AEF is owned and operated by Appellees, 409 Smiley, Inc., Namar, Inc., Wilmarlie, Inc. Throughout this opinion, the ownership group will be referred to as Smileys. Although listed in the caption, 291, Inc. and MGMRP, Inc. have not appeared before this Court in this matter.

By 1999, a number of lawsuits had arisen between Smileys and the Township regarding the continuing operation the AEF: one before the Delaware County Court of Common Pleas, one before the Commonwealth Court of Pennsylvania,[2] and one before the United States District Court for the Eastern District of Pennsylvania (Federal Court).[3] Numerous hearings were conducted during the course of these various proceedings. During the latter portion of 2000, the parties began settlement negotiations under the supervision of the presiding judge in the federal case. By November 2000, the parties had reached an agreement in principle resolving each of the pending cases that, once executed, would be reviewed by the judge and, if approved, incorporated by the Federal Court into a consent decree.

The proposed terms of the agreement in principle addressed, *inter alia*, the relocation of the facility as well as certain operational regulations specific to the business. Regarding the relocation, Smileys agreed not to contest a condemnation proceeding against the building in the residential district out of which they currently operated their AEF; however, in accordance with the agreement in principle, Smileys would be permitted to relocate its AEF as a legal, non-conforming use, to a parcel of property, zoned industrial, that was located within an existing industrial park.[4] The agreement indicated that Smileys would not need to obtain a special exception to begin operating the facility at the industrial site. However, the agreement did indicate that the new AEF would be "subject

2. This case was actually a consolidation of two cases, 1094 C.D.2000 and 1095 C.D.2000.

3. The parties to this proceeding do not clearly describe the nature of each of these proceedings; however, the preamble to the global settlement agreement, discussed *infra*, does provide some background as to these cases:

> WHEREAS, Smileys owns and operates a facility ... which Smileys alleges is a pre-existing non conforming adult entertainment use; and
> WHEREAS, the Township believes certain limitations and restrictions on this use are legal; and
> WHEREAS, the Parties are desirous of concluding the Litigation; and
> WHEREAS, the Township is desirous of Smileys' relocation to the Industrial District in the Township and the current facility being used for some other use other than adult entertainment and therefore the Township is willing to facilitate the acquisition of the Premises (as hereinafter defined) by the Delaware County Redevelopment Authority through condemnation of the land and building situate at 409 Smiley Street, Ridley, Delaware County, Pennsylvania, (hereinafter "Premises") and has delivered correspondence to Smileys indicating the intention to condemn; and
> WHEREAS, Smileys, in lieu of the condemnation proceeding, is willing to proceed

> with an amicable taking of the Premises by the Township or its designated authority, provided that Smileys is permitted to acquire, construct and open a new facility for adult entertainment located in the Township only upon property adjoining either Sellers or Stewart Avenues at or near their intersection with Route 291 (it being understood that the proposed new location is an integral condition of this Agreement and if Smileys does not locate there, then this Agreement shall be null and void) upon such terms and conditions as are acceptable to Smileys and in accordance with the Township's building code and land development and zoning ordinance;

(Global Settlement Agreement and Mutual General Release at 2.)

4. Although the zoning code authorized AEFs in the industrial zone, it required parties seeking to locate an AEF there to first obtain a special exception. Under the agreement, the Township would not require Smileys to obtain a special exception to locate an AEF at the site. The agreement noted that, even if a special exception were required, issuance of the exception would have been supported by ample evidence that was presented during hours of hearings before the Board and the Township in relation to the pending lawsuits.

to other aspects of the Township Zoning Ordinance pertaining to setbacks, parking, etc." (Global Settlement Agreement and Mutual General Release, paragraph 4D, at p. 5.) Regarding the operational regulations, the agreement noted that the AEF provisions of the Zoning Ordinance would not apply to Smileys' new AEF, but that instead, the new AEF would be subject to AEF operational conditions that would be issued by the Federal Court in the consent decree.[5]

The industrial lot to which the new AEF was to relocate under the agreement was adjacent to a facility owned and operated by Boeing. At Boeing's request,[6] on November 10, 2000, Township officers met with Boeing officials regarding the relocation of Smileys' facility. Township officials provided Boeing with copies of the proposed settlement and consent decree and

also informed them as to the pending cases. At the meeting, the Boeing representatives raised concerns as to the relocation of this facility. Township officials indicated that both a proposed settlement reached by the parties, as well as a new set of zoning regulations relating to the operation of Smileys' AEF at this new site, would be voted on at the November 21, 2000 meeting. The Township officials also indicated their intention to ensure that landscaping on the future AEF property would be put in place to provide a buffer between the AEF and Boeing. Boeing took no further action regarding this settlement in the period between the November 10, 2000 meeting it attended, and the November 21, 2000 Township meeting.[7]

At the November 21, 2000 meeting, the terms of the settlement agreement were put to a vote and the Township unanimous-

---

**5.** Paragraph 3 of the Global Settlement Agreement and Mutual General Release provides that:

> The Parties will enter into a Consent Decree to be issued by the United States District Court, Eastern District of Pennsylvania, wherein all Parties will stipulate and agree to abide by the regulatory terms in the operation of the New Premises as hereinafter defined. The Consent Decree will set forth ... the regulatory language under which Smileys has agreed to be bound with respect to the operation of its new adult entertainment facility.... As a result of Smileys' operation of a prior nonconforming use, and in settlement of the litigation among the Parties, it is agreed that the New Premises shall not be subject to the existing Adult Entertainment Ordinance nor any revision, supplement or replacement thereto.

(Global Settlement Agreement and Mutual General Release, paragraph 3, at p. 3.)

The Federal Consent Decree, issued on 2/26/01, provided that:

> The Township of Ridley Zoning Hearing Board and all Individual Defendants ... agree to abide by the terms set forth in the Global Settlement Agreement ... and the document entitled "Regulations Pertaining to Operation of an Adult Entertainment Fa-

cility Located at Route 291 Upon Property Adjoining Sellers or Stewarts Avenues" attached as Exhibit "B" and incorporate herein by reference.

(Consent Decree, paragraph 1, at p. 2). The consent decree also noted that the terms "and conditions" contained therein "shall be fully enforceable by the Court as part of the Order disposing of this case" and that the Court would "retain jurisdiction until the execution of all provisions of the Global Settlement Agreement...." (Consent Decree at p. 2). The Exhibit B referenced in the Consent Degree were the regulations adopted by the Township Supervisors at the November 21, 2000 meeting, discussed *infra*.

**6.** Boeing learned of the pending settlement discussions from an article printed in the local newspaper.

**7.** The record does indicate that Boeing submitted a letter on November 21, 2000, to a Township Commissioner in which Boeing expressed its intent to open a day-care facility on its property. However, Boeing has not argued that this letter should have any bearing on the outcome of this case. Accordingly, we do not factor this letter into our analysis of the issues before us.

ly approved the settlement. Additionally, on that same date, the Township adopted the site-specific AEF zoning regulations regarding Smileys' operation of an AEF on the property adjacent to Boeing.[8] No Boeing representative was present at this Township meeting. On December 7, 2000, representatives for the parties signed the agreements. Shortly thereafter, on February 26, 2001, the Federal Court approved the settlement agreement and incorporated it into a consent decree that was issued on February 26, 2001.

On January 5, 2001, Boeing filed a notice of appeal to the Board, asking it to "rule [as] invalid [the] ordinance or 'regulation' " pertaining to the operation of the AEF at the industrial park site, enacted at the November 21, 2000 meeting, ..." In reviewing this application, the Board noted that the application amounted to a validity challenge as to the substance and procedure of adopting the regulations as they applied to the property.

On March 14, 2001, following public notice, the Board conducted a hearing on Boeing's appeal. On April 11, 2001, after review of the testimony, exhibits, briefs and memoranda submitted by the parties, the Board voted unanimously to deny Boeing's application, and upheld the regulations as procedurally and substantively valid. The Board rejected Boeing's con-

tract and spot zoning arguments and noted that the Board and the Township had acted "without disregard of community wide perspective." The Board also noted that, hypothetically, if it were to receive an application for a special exception to operate an AEF in the industrial area, it would approve such an application. The Board also noted that Boeing had notice of the proposed settlement agreement and adopting regulations as of November 10, 2000, but did not file a validity challenge until January 5, 2001, 45 days after the Ordinance was adopted on November 21, 2000. The Board noted that pursuant to Section 909.1(a)(2) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10909.1(a)(2),[9] Boeing had 30 days after the effective date of the ordinance to bring an appeal.

■ Boeing appealed this decision to the trial court. Smileys and the Township were granted the right to intervene in the appeal. On April 2, 2002, the trial court issued a final order concluding that the "Zoning Hearing Board of Ridley Township did not commit either an abuse of discretion or an error of law in denying Boeing's application." The trial court agreed with the Board's conclusion as to the untimeliness of Boeing's challenge. Boeing appeals this decision.[10]

---

8. The site-specific regulations mirrored the AEF zoning provisions, modifying only a few of the provisions. For instance, the AEF Ordinance required the premises to be inspected by the Zoning Officer, the Fire Marshal and the Police prior to issuance of a building permit, whereas the site-specific regulations required the inspection of only the Zoning Officer and the Fire Marshall. The AEF zoning provisions provided that the Zoning Officer must suspend a permit if the permitee or employee violates the AEF zoning provisions, whereas the site-specific regulations provided that the Zoning Officer can only suspend the permit after providing written notice of the

violations to Smileys and only if the violation remains unabated for ten days following service of the notice.

9. This Section was added by Section 87 of the Act of December 21, 1988, P.L. 1329.

10. Our standard of review when the court of common pleas takes no additional evidence, is whether the zoning board committed an error of law or a manifest abuse of discretion. *Appeal of Brickstone Realty Corp.,* 789 A.2d 333 (Pa.Cmwlth.2001), *petition of allowance for appeal denied,* 569 Pa. 723, 806 A.2d 863 (2002); *Yarmey v. Zoning Hearing Board of*

On appeal, Boeing raises two issues for our consideration. First, it asserts that the Ordinance and consent agreement constitute contract zoning[11] and/or spot zoning,[12] both of which are prohibited under Pennsylvania law. Second, it maintains that the Ordinance and consent provisions constitute a zoning ordinance amendment and that the process utilized here violated the procedural requirements of Section 609 of the MPC, 53 P.S. § 10609, pertaining to the enactment of zoning ordinance provisions.[13] The focus of each of these arguments is that insufficient notice was provided to Boeing. Before the Zoning Hearing Board, in arguing that the Board applied inappropriate procedures by not conducting a special exception hearing, Boeing argued that:

> [A] special exception would have given us notice that it was being done. It would have given us an opportunity to come to the Board and explain how it would have damaged our property rights, and would have given us an opportunity to essentially be heard.

(Hearing on Boeing's Application, 3/14/01, Transcript at 7.) Boeing argues that, since the appropriate MPC provisions as to notice and opportunity to be heard were not followed in accordance with *Valianatos v. Zoning Hearing Board of Richmond Township*, 766 A.2d 903 (Pa.Cmwlth.2001), the enactment is *void abinitio* and, consequently, its challenge was not late.

The Township of Ridley and Smileys filed separate briefs in response, but raise similar arguments. First, they assert that, pursuant to Section 909.1 of the MPC, Boeing's challenge is untimely. Both Smileys and the Township contend that under Section 909.1(a)(2), Boeing had a 30-day period in which to bring any appeals contesting the validity of the AEF Ordinance enacted at the November 21, 2000

---

*Forty Fort Borough,* 745 A.2d 1274, 1276 n. 3 (Pa.Cmwlth.2000).

11. Boeing argues that the Township inappropriately agreed to a zoning change, granting a special exception without a hearing, and that municipalities and property owners may not, by contract, agree to modification of zoning provisions. Although Boeing, in the factual section of its brief, lists ways in which the provisions of the regulations adopted for this new site differ from the provisions of regulations in effect for other AEFs, Boeing, in its argument section, does not challenge the legality of any specific provision of these site-specific regulations. Instead, Boeing argues that the provisions, as a whole, are void because they constitute an impermissible contract between the parties. Rather than raising substantive concerns as to particular provisions, Boeing focuses on the process of their development and implementation. Boeing acknowledges that "Pennsylvania law permits municipalities to rezone, pursuant to settlement agreements, property that is the subject of litigation because there are inherent assurances that the affected neighboring landowners will have notice of the rezoning and will have an opportunity to be heard on that issue. No such assurances are present when, like in the instant case, the property that is rezoned was not the subject of the underlying litigation." (Appellant's Brief at 13.) Boeing then references the MPC provisions as to notice that it claims were not satisfied. The contract claim, thus, focuses on what Boeing classifies as the Township's actions impermissibly taking place outside the provisions of the MPC.

12. Boeing contends that the settlement at issue resulted in a particular parcel of property being treated differently from all other parcels, that this constituted an amendment of the zoning code, and that procedural safeguards provided by the MPC for an amendment were not satisfied.

13. Boeing contends that site-specific regulations constituted an amendment of the zoning code, noting that the existing adult entertainment provisions, which these regulations mirror, are themselves, codified within the zoning code. As such, Boeing contends that the regulations could only be enacted pursuant to the procedural mechanisms of the MPC.

meeting.[14] The Township argues that "[t]he only way Boeing can avoid this result is if it had no actual notice of the Township's intention to act on November 21, 2000." (Ridley Township's Brief at 2.) It contends that Boeing had notice as evidenced by the November 10th meeting of Boeing and Township officials.

Second, Smileys and the Township argue, citing to *Summit Township Taxpayers Association v. Summit Township Board of Supervisors,* 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980), that Boeing is not challenging an action by the Board, but rather, is collaterally attacking the order of the Federal Court.[15]

■ Because the parties frame their issues in terms of the applicability of the MPC to the action taken, we will, first, examine their contentions as to the timeliness of Boeing's action under the terms of the MPC.

Section 909.1(a)(2) provides that zoning boards shall hear:

Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance. Where the ordinance appealed from is the initial zoning ordinance of the municipality and a zoning hearing board has not been previously established, the appeal raising procedural questions shall be taken directly to court.

It is not disputed that the Township adopted the Global Settlement Agreement at its November 21, 2000 meeting via ordinance. It is also not disputed that, as part of this settlement, and on the same date that it was approved, the Township also adopted the AEF regulations tailored specifically for the new location. Under the terms of the MPC, procedural challenges to the Township's action needed to be brought within 30 days of adoption of the challenged ordinance.[16] In this case, Boeing submitted its challenge on January 5, 2001, nearly a month and a half after the Township's action. Therefore, Boeing's challenge was filed outside the 30–day period and, as such, was time barred. Accordingly, we find no error in the Board's decision on this issue.

Boeing relies on *Valiantatos* to circumvent its failure to file a timely appeal,

---

14. The Township also notes that, on November 21, 2000, an attorney for Boeing hand delivered a letter to the Zoning Officer in which Boeing sought permission to build a nursery school on its property. The Township notes that, under the zoning regulations, an adult entertainment facility may not be located within 500 feet of a school. The Township argues that this letter clearly indicated Boeing's knowledge of the pending decision, as well as its own back-door attempt to stop Smileys from moving its business to the industrial park.

15. Smileys also argues that Boeing's appeal should be dismissed under Pa. R.A.P. 2188 because Boeing was required to provide Smileys with the Reproduced Record 30 days in advance of its brief and that, in violation of Pa. R.A.P. 2154, Boeing served the record at the same time as it served the Brief. Boeing filed a Reply Brief addressing this issue. In the Reply Brief, Boeing maintains that, pursuant to Pa. R.A.P. 2186, it was not required to serve the reproduced record until no later than the date of service of Appellant's brief. We agree with Boeing's statement of the law. Accordingly, we reject Smileys' request that Boeing's petition be dismissed.

16. *See generally Larwin Multihousing Pennsylvania Corporation v. Commonwealth,* 19 Pa. Cmwlth. 181, 343 A.2d 83 (1975) (noting in dicta that a permit that had been modified by consent decree could not be attacked collaterally by an interested party because the interested party failed to file a challenge to the modified permit within the 30–day period established by the MPC).

arguing that, under that case, Boeing did not have to comply with the 30–day period because the Ordinance was void *ab initio*. The basis for establishing the void *ab initio* argument is that there was insufficient notice of the enactment provided.

Our Court recently addressed this same issue. In *Schadler v. Zoning Hearing Board of Weisenberg Township*, 814 A.2d 1265 (Pa.Cmwlth.2003), we determined that allegations of procedural error in a zoning board's adoption of an ordinance must be raised within a 30–day period or they are waived.[17] We reasoned that:

> [T]he purpose of Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code[18] is to limit the time in which a person may challenge a municipal ordinance on procedural grounds, i.e., raising procedural questions or defects in the process of enactment or adoption. However, [the] assertion that a municipal ordinance is rendered void *ab initio* any time defects in the process of the enactment or adoption exist and no time limits apply would render Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code meaningless. In effect, what the provisions do is to make all ordinances valid, no matter the procedural defect, unless a challenge is brought within 30 days. Otherwise, challenges could be brought forever by arguing that the ordinance is void *ab initio* because of some defect in its enactment. No one then could ever rely on the ordinance with certainty because it would always be subject to a proce-

dural challenge. Such an interpretation results in an absurd outcome and renders Section 909.1(a)(2) of the MPC and Section 5571(c)(5) of the Judicial Code meaningless, and, therefore cannot be upheld.

*Id.* at 1270. (footnote added). We find this analysis controlling on the void *ab initio* argument raised by Boeing.

Although the Board's primary argument before this Court focuses on the lateness of Boeing's challenge, the Board's decision focused on the effect of *Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 49 Pa. Cmwlth. 459, 411 A.2d 1263 (1980). We agree with the Board that *Summit* is determinative of Boeing's challenge. In *Summit*, we addressed the validity of a third party challenge to zoning matters resolved by means of a consent decree. The underlying case that lead to the collateral challenge involved a landfill which had been determined to be a legal, nonconforming use in an R–2 Residential District. The owner sought to expand operations onto an adjoining parcel of land. The landfill owner initiated a curative amendment proceeding, challenging the township's zoning ordinance on the basis that it improperly made no provision for the operation of a landfill within the township. The zoning hearing board rejected the landfill owner's curative amendment. The owner appealed this decision to the common pleas court. Prior to the common pleas court ruling on the appeal, the landfill owner and the township entered

---

**17.** Among the procedural errors alleged were the failure to "follow the [MPC] requirements for publication [and] advertisement...." *Schadler*, 814 A.2d at 1266.

**18.** Section 5571(c)(5) of the Judicial Code provides:
*Ordinances, resolutions, maps, etc.*—Questions relating to an alleged defect in the

process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.
42 Pa.C.S. § 5571(c)(5).

into negotiations to resolve the case. The negotiations were successful and, after publication and notice, the zoning hearing board conducted a public hearing. At the conclusion of the hearing, the board of commissioners "authorized counsel to execute a stipulation settling [the] appeal." *Id.* at 1265. Shortly thereafter, the common pleas court issued an order adopting the provisions negotiated by the parties, in which the landfill owner's appeal was sustained, and the township was ordered to issue the necessary zoning permit so that the landfill could operate on the adjoining parcel of land, which operation would occur under "negotiated conditions." *Id.*

Following issuance of this order, several neighbor residents objected to the action taken by the board in voting to execute the stipulation.

In this case (No. 5471–A–1977), objectors appeal from the township board's authorization of the stipulation in [the landfill owner]'s appeal, characterizing the board action as being, in effect, a zoning ordinance amendment, *i.e.,* an acceptance of the curative amendment. Alternatively, objectors describe the board action as a grant of a variance. The lower court in effect treated objectors' present appeal as one taken, not just from the "stipulating" itself, but from the disposition of [the landfill owner's] appeal brought about by that stipulation.

\* \* \* \*

The association also contends that the stipulation entered into by the parties was in fact a grant of a variance, in violation of Section 912 of the MPC, 53 P.S. § 10912, which invests the zoning hearing board with the exclusive power over variance actions. However, here the actual decisive event was the settle-

ment of a judicial proceeding, under court supervision. Because court-approved settlements of zoning cases are lawful, *see Al Monzo Construction Co. v. Monroeville Borough,* 5 Pa.Cmwlth. 97, 289 A.2d 496 (1972), **we must recognize such settlements as being distinct from zoning hearing board variances; even though a judicial settlement may result in a departure from the ordained zoning pattern, that kind of departure falls within the court's jurisdiction, not the board's jurisdiction. The objectors' real concern here is that if parties to zoning appeals can settle them by stipulation, the procedures and purpose of the MPC may be totally circumvented. However, the law favors settlement. . . .**

*Id.* at 1265–66 (emphasis added). Accordingly, we rejected the objectors' arguments.

In the instant case, Boeing's arguments are analogous to those raised and discounted by this Court in *Summit.* The learned trial court ably and correctly discerned and applied our holding in *Summit* to this case:

The Commonwealth Court … reasoned that the law favors settlements and, even in the context of zoning appeals, collateral attacks on a settled appeal should not be permitted where those seeking relief failed to avail themselves of procedures to insure their participation in the underlying actions

\* \* \* \*

The focal point of the Commonwealth Court's analysis in *Summit* was not whether one or two properties were involved, but rather whether or not the objectors had a procedural opportunity to insure their participation in the underlying matters encompassed by the settlement agreement. At the very least, the record before the Board estab-

lished that on November 10, 2000, Appellant was made aware that a global settlement was being implemented which, by its terms, would impact property adjoining their plant facility. As such, [Boeing] had an opportunity to take any number of legal steps to insure that they would be heard on the issue. Accordingly, under these facts, we likewise are of the opinion that the Zoning Hearing Board did not commit an error of law in concluding that Appellant's validity challenge should be denied pursuant to the holding in *Summit.*

(Trial Court Opinion at 6.) We agree with this analysis.

In *Summit,* we rejected objectors' arguments because objectors failed to raise them in the appropriate proceeding; that is, they failed to intervene in the underlying case. We similarly rejected objectors' basis for not intervening, specifically that they thought the trial court would reject such a motion. We noted that "[a] mere suspicion that the attempt to intervene would have been rejected by the court does not excuse the objectors' failure to

pursue the correct legal process." *Summit,* 411 A.2d at 1265. As further basis for rejecting objectors' arguments, we noted that "they simply did not appear before the lower court, or complain at any place in that appeal that they had been erroneously omitted." *Id.* at 1266.

 Similarly, in the instant case, both the record and the briefs are devoid of any indication that Boeing in any manner complained that it was being erroneously omitted or that it sought to present its position in the underlying case before the Federal Court or in any of the related pending cases resolved by the consent decree. As noted in *Summit,* the "decisive event" for review purposes was not the action by the Board, but rather the "settlement of a judicial proceeding, under court supervision." *Id.* at 1266. In accordance with *Summit,* review of the issues arising during the process leading to a court order are appropriately addressed to the court overseeing the case's resolution—review properly "falls within the court's jurisdiction, not the board's jurisdiction." [19] We, therefore, find no error with the Board's

**19.** This approach is not without its critics. One set of commentators described our jurisprudence on this issue: "In effect, Pennsylvania courts reserve for themselves the power to permit and enforce unconstitutional zoning actions, collaterally estopping the public from intervening and attacking board action which, although contravening a board's limited police power, are taken pursuant to a judicially approved settlement." *Settling Land Use Litigation While Protecting the Public Interest: Whose Lawsuit is this Anyway,* 23 Seton Hall L.Rev. 844, n. 56 (1993). These same commentators further stated that:

The Pennsylvania approach raises legitimate concerns about the breadth of both the municipality's and the court's authority.... This judicial arrogation of authority, as some critics might describe it, may simply be judicial deference to the result that the governing agency has, in fact, determined to be in the public's best interest.... Nevertheless, any time the courts sanction and enforce a settlement without permitting

public participation, considerations of fairness, procedural due process and the appearance of evenhanded justice dictate close scrutiny.

*Id.* at 856. We share these same concerns. However, we note that in *Summit* there was, indeed, the opportunity for participation—the Zoning Hearing Board conducted a hearing on the proposed settlement at which interested parties had an opportunity to testify. Additionally, we note that in *Summit,* this Court precluded the objectors' appeal on the basis of their failure to intervene in a timely manner. In the instant case, Boeing was also provided notice as to the pending litigation and consent decree. Boeing had several weeks in which to prepare objections to the proposed settlement. Indeed, the consent decree was not issued until nearly three months after Boeing was made aware of the negotiations. There is no indication that Boeing sought to bring its concerns before the appropriate judicial body overseeing and, ultimately, authorizing the action complained of. By

decision rejecting Boeing's present challenge.[20]

For these reasons, we affirm the decision of the Court of Common Pleas of Delaware County.

## ORDER

**NOW,** April 29, 2003, the order of the Court of Common Pleas of Delaware County in the above captioned matter is hereby affirmed.

failing to seek to intervene in any of the underlying cases, Boeing's inaction has led to the present situation in which, rather than presenting its concerns before the court that is both overseeing settlement and issuing the consent decree, Boeing is now before a collateral court, in a collateral proceeding asking this court to overturn the order of the Federal Court. Despite having specific, actual notice as to the timing of the Township's actions in dispute in this case, Boeing failed to raise its procedural challenges in a timely manner. Given these circumstances, we find no error in the trial court decision that *Summit* controls and that the procedural issues are untimely. As Boeing has not specifically challenged any specific regulatory provisions on substantive grounds, we decline to address *sua sponte* any potential substantive infirmities of any of these specific provisions.

20. We note that AEFs were a permitted use on the parcel adjacent to Boeing to which the new AEF would move. In *Summit,* the agreement essentially resulted in the *de facto* granting of a variance. In the instant case, the effect is essentially the *de facto* granting of a special exception, notably after the Township had conducted numerous hearings. The granting of a special exception requires a lesser burden than the granting of a variance. As Professor Ryan notes in his treatise:

> An owner who seeks a special exception asks permission to do something which the ordinance itself permits in a proper case. Generally speaking his application will be granted if it is consistent with the public interest. . . . In contrast, an applicant for a variance seeks permission to violate the ordinance.

*Ryan on Zoning,* § 1.2.1. *See also* Section 912.1 of the MPC, 53 P.S. § 10912.1, added by Section 91 of the Act of December 21, 1988, P.L. 1329. Accordingly, the *de facto* granting of a special exception resulted in even less of a departure "from the ordained zoning pattern" than did the result of the consent decree in *Summit.*