## Borough of Glenfield, Appellant *v.* C. & E. Motors, Inc., Appellee.

Argued October 30, 1975, before President Judge BOWMAN and Judges ROGERS and BLATT, sitting as a panel of three.

116

*Albert G. Feczko*, with him *Feczko and Seymour*, for appellant.

*Samuel N. Goldman*, with him *Richard Alan Weinstein*, for appellee.

OPINION BY JUDGE ROGERS, December 2, 1975:

The Borough of Glenfield has appealed from an order of the Court of Common Pleas of Allegheny County sustaining the appeal of C. & E. Motors, Inc. from the action of the Borough's Zoning Hearing Board refusing a variance.

C. & E. Motors operates a marina on a tract of land on the banks of the Ohio river in the Borough of Glenfield. Its use of this land conforms to the Borough's zoning regulations. Anticipating interference with its business as the result of the proposed construction of a highway bridge, C. & E. Motors leased from the Penn Central Transportation Company a tract of land on the river bank at which it intends to establish additional docking facilities and on which it proposes to construct a customers' parking lot and a small playground. The leased premises is located in the Borough's A Residential zoning district in which the proposed parking lot, at least, is not a permitted use. Although it is not clear on the most unsatisfactory record certified to us what kind or form of application, if any, C. & E. Motors made to the Borough zoning authorities, the matter came before the Zoning Hearing Board as an application for a variance from the use regulations of the Borough zoning ordinance. A hearing was conducted by the Board. The notes of testimony,

which were recorded on tape and later transcribed, demonstrate that the hearing consisted only of a general discussion of the parking lot and playground proposal by the persons present, much of which was irrelevant to any issue before the Board. A principal of C. & E. Motors and its counsel urged the merits of the application and Borough residents made declarations in opposition. Although some of the persons in attendance were sworn in at some considerable time after the hearing started, no witnesses were called and formally examined and there was no division of the proceedings between the applicants' and protestants' cases. We gather, however, from a statement of C. & E. Motors' counsel made early in the proceedings that he, at least, recognized that a principal issue was that of whether or not the leased ground could feasibly be developed for residential use.

The Zoning Hearing Board denied the requested variance without findings or conclusions. C. & E. Motors appealed this decision to the Common Pleas Court, a judge of which properly remanded the matter to the Board for findings and conclusions.[1] The Board responded by a writing containing nine findings of fact, none of which relate to the feasibility of placing dwellings on the leased tract, and three so-called conclusions of law, one of which includes factual determinations, as follows:

"There are no unique physical circumstances including irregularity narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that unnecessary hardship is not due to such conditions generally created by the provisions of the

---

1. We were informed at argument that the hearing judge heard evidence on this occasion. If so, no record of such evidence was certified to us. As noted in the body of this opinion, the trial judge on the second appeal stated that he was engaged only in reviewing the Board's decision for abuse of discretion or error of law.

zoning ordinance in the neighborhood or district in which the property is located. . . ."

C. &. E. Motors again appealed. The trial judge, who described his function as that of review of the Board's decision, nevertheless made what is essentially a finding that the leased tract is "highly undesirable for residential use and can[not] possibly be used for that purpose" due to its shape, its proximity to railroad tracks and the river and to the fact that it had been filled with sand, gravel and earth dredgings.

It is a maxim of Pennsylvania zoning law that a court which has not itself taken evidence, may not properly make its own findings of fact and that its review of the decision of a Zoning Hearing Board must be confined to a determination of whether an abuse of discretion or error of law has been committed. *Appeal of Kit-Mar Builders, Inc.*, 439 Pa. 466, 268 A.2d 765 (1970). The trial judge seems to have concluded that the Board's finding (which it called a conclusion) that the leased tract had no special characteristics rendering it unfit for a conforming use, was contrary to the evidence and the product therefore of an abuse of the Board's discretion. A close examination of the record compels us to a different conclusion. The only clear mention of the infeasibility of making residential use of the leased tract which we can find is a statement to this effect by C. & E. Motors' counsel during an extended colloquy early in the hearing and before anyone was sworn. This was not evidence. While the description of the property could support an inference that it would perhaps be an unlikely homesite, C. & E. Motors adduced no direct evidence (as for example, the opinion of persons knowledgeable in residential development), that a dwelling or dwellings could not feasibly be placed and used on the tract. On the other hand at least one protesting neighbor declared that there were homes in the vicinity on lands with characteristics similar to that which was the subject of the hearing. In short, the Board's failure

to find on the basis of this record that the leased tract could not be used as zoned was not in our opinion an abuse of its discretion.

Since the Zoning Hearing Board must bear a large share of the responsibility for the improper informality of the hearing and the inadequate transcript of the Board's proceedings,[2] we believe that fairness requires that we should vacate both the Board's and the lower court's order and remand the record for a new Board hearing properly conducted and reported; and we so order.

---

2. The persons who spoke at the hearing were not required to identify themselves. After the tape was transcribed someone attempted to supply identification by writing names and in many cases only initials in the margin of the transcript.