604 A.2d 763

**EAST NORRITON TOWNSHIP, Appellant,**

v.

**GILL QUARRIES, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided Feb. 19, 1992.

Reargument Denied April 2, 1992.

Carl N. Weiner, for appellant.

Gilbert P. High, Jr., for appellee.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Appellant, East Norriton Township (Township), appeals an order of the Court of Common Pleas of Montgomery County (common pleas court) which dismissed the Township's motion for new trial and adopted a previous decree nisi as the final decree. We will reverse.

The Township initiated an equity action against the appellee herein, Gill Quarries, Inc. (Gill), owner of a large tract of land which is zoned partly industrial (industrial tract)[1] and partly residential (residential tract). Therein, the Township sought to enjoin Gill from engaging in mining activities and other industrial uses on the residential tract. This action was subsequently resolved by stipulation executed by both parties on February 13, 1990 and approved by order of the common pleas court on February 15, 1990.

In addition to approving the stipulation, the common pleas court order of February 15, 1990 provided, in accordance with paragraph 1 of the stipulation, that the matter be relisted for trial at the first available opportunity six months from the date of the stipulation.[2] The matter was subsequently heard by the common pleas court to resolve the sole issue of whether the stipulation allowed Gill's dump trucks to venture beyond the industrial tract and trespass

1. Gill operates a quarry on the industrial tract.
2. Evidently, this relisting was ordered to ensure the parties a speedy resolution in the event of noncompliance with, or misunderstanding concerning, the stipulation.

upon a portion of the residential tract in order to deposit crushed stone onto a stone pile located on the industrial tract near the demarcation line between the two zoning classifications.

By decree nisi dated January 25, 1991, the common pleas court concluded that paragraph 4 of the stipulation allowed Gill to operate its dump trucks over a small portion of the residential tract for the purpose noted above. The Township thereafter filed a motion for new trial, which was treated as a motion for post-trial relief under Pa.R.C.P. No. 227.1.[3] The common pleas court, by order dated March 27, 1991, dismissed this motion and adopted the decree nisi of January 25, 1991 as its final decree, thereby prompting the instant appeal.

Before us is the sole issue of whether the common pleas court erred in concluding that the Township entered into a stipulation which allowed Gill a perpetual right to have its dump trucks illegally encroach upon residentially zoned land for industrial purposes. In resolving this issue, we are mindful that a determination granting or refusing a new trial is discretionary and will not be reversed absent a clear abuse of discretion or an error of law which controlled the outcome of the case. *Mishkin v. Lancaster Redevelopment Authority*, 6 Pa.Commonwealth Ct. 97, 293 A.2d 135 (1972).

Initially, we note that "a valid stipulation [, as here,] becomes the law of the case." *Commonwealth of Pennsylvania v. Rodebaugh*, 102 Pa.Commonwealth Ct. 592, 604, 519 A.2d 555, 561–562 (1986). We note as well language from the case of *Tyler v. King*, 344 Pa.Superior Ct. 78, 496 A.2d 16 (1985), pertaining to stipulations:

The Pennsylvania rule on stipulations is long-settled: parties may bind themselves, even by a statement made in court, on matters relating to individual rights and

**3.** The motion for post-trial relief replaced various other previously used motions and exceptions, including the motion for new trial and exceptions following a judge's adjudication in an equity action. *See* Pa.R.C.P. No. 227.1(a); Note. Pursuant to Pa.R.C.P. No. 227.1(a)(1), "the court may (1) order a new trial as to all or any of the issues ..."

obligations, so long as their stipulations do not affect the court's jurisdiction or due order of business....

The courts employ a contracts-law analysis to interpret stipulations, so that the intent of the parties is controlling.... The language of a stipulation, like that of a contract, is construed against the drafter.[4] ... The court will hold a party bound to his stipulation: concessions made in stipulations are judicial admissions, and accordingly may not later in the proceeding be contradicted by the party who made them....

*Id.,* 344 Pa.Superior Ct. at 88–89, 496 A.2d at 21 (citations omitted and footnote added).

Because contracts-law analysis is employed to interpret stipulations, we must interpret the instant stipulation in accordance with the following rules:

A court cannot disregard a provision in a [stipulation] if a reasonable meaning can be ascertained therefrom. In construing a [stipulation,] each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.

*J. McShain, Inc. v. General State Authority,* 9 Pa.Commonwealth Ct. 427, 431, 307 A.2d 469, 472 (1973). "[W]hen the words are clear and unambiguous[,] the intent is determined only from the express language of the [stipulation]." *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 143, 302 A.2d 347, 351 (1973).

Having studied the instant stipulation in its entirety, we find only paragraphs 3–5 thereof relevant to the issue presented on appeal. These paragraphs read as follows:

3. Six months from the date hereof, Gill Quarries, Inc. will cease use of the drop ball on the shaded residential area at the rear of properties fronting on Township Line Road as shown on the said plan, *except* as the parties might otherwise agree in writing or the Court may otherwise order.

**4.** Gill evidently drafted the stipulation in question here.

4. Gill Quarries, Inc. will *remove* stored stone from the shaded residential area to the west of the creek as shown on the said plan[5] and will refrain from adding further to any storage which may presently exist. *Gill Quarries, Inc. further agrees to refrain from commercial or industrial activity in the residentially zoned tract* except for the drop ball activity[6] referenced above and *except for truck traffic required to move stored product.*[7]

5. Both parties agree to use due diligence to reach agreement on *the future use of* the industrially zoned tract[8] and *the residentially zoned tract for industrial purposes.*

R.R. 11a–12a (emphasis and footnotes added).

The Township asserts that the stipulation permitted Gill's dump trucks to encroach upon the residential tract only in order to remove all of the stored product which had been unlawfully located thereon and then cease using this tract for industrial purposes; not to encroach upon the residential tract perpetually to add to the stored product piled on the industrial tract, as found by the common pleas court. The Township claims that it would make no sense for it to have filed an injunction to prevent industrial use in the residential tract and then stipulate to allow such use.

Gill counterargues that paragraph 4 of the stipulation prohibits commercial or industrial activity in the residential tract with the exception of truck traffic required to move stored product. Gill claims that the exception was included

5. Gill contends that it has complied with this portion of the stipulation by relocating the stored stone to the industrial tract. *See* H.T., p. 17. In any event, this is not an issue before us.

6. Gill evidently uses a drop ball to crush large blocks of stone. *See* H.T., p. 20.

7. Judge Lowe, in Finding of Fact No. 8 of the Adjudication and Decree Nisi of January 25, 1991, stated: "It is uncontroverted that the large pile of crushed stone is known as 'stored product.'" More accurately, "stored product" is the crushed stone comprising the large pile. *See, e.g.,* H.T., p. 55; *see also* January 25, 1991 decree nisi.

8. From our review of the hearing transcript, this would appear to relate to Gill's proposed plan to convert the existing quarry into a landfill. *See, e.g.,* H.T., p. 10.

in the stipulation because, due to the topography of the land and in keeping with trade practice, it would be effectively denied the use of the stored product pile situated on the border of the industrial tract if its dump trucks could not traverse a limited portion of the residential tract to access that stored product pile.

In construing the stipulation, the common pleas court concluded that no reasonable interpretation of paragraph 4, quoted above, would support a declaration that the stipulation did not grant Gill the right to have its dump trucks encroach upon the residential tract for industrial purposes. In so concluding, the common pleas court, while quoting both paragraphs 4 and 5 of the stipulation, placed, in our opinion, undue emphasis on paragraph 4 and, apart from quoting paragraph 5, virtually ignored it, contrary to the rules we recited earlier.

Moreover, the common pleas court, in support of its conclusion, commented:

> It is to be observed that the Stipulation of the parties, as approved by the Court, was predicated upon the unique configuration of the typography [sic] and the location of a brook or stream which necessitated, for practical purposes, the minimal trespass of truck traffic onto the residentially zoned tract. Both parties were privy to this singular circumstance when the Stipulation was concluded.

*East Norriton Township v. Gill Quarries, Inc.* (No. 84–09257, filed March 27, 1991), slip op. at 2. Nothing in the record, however, sufficiently supports this comment,[9] nor

**9.** While Gill's counsel stated that Gill pointed out to the Township the unique configuration of the area of the industrial tract which Gill had chosen to use for the storage of stone and that such configuration made it impossible to store stone in this area without having the dump trucks trespass onto the residential tract, H.T., pp. 11–12, 15–16, self-serving, unsubstantiated and unsworn statements by counsel are not competent evidence. *See Borough of Glenfield v. C. & E. Motors, Inc.,* 22 Pa.Commonwealth Ct. 115, 347 A.2d 732 (1975). Moreover, we note in passing, without deciding the accuracy thereof, that the Township presented testimony that the stone pile was accessible without traversing the residential tract. *See* H.T., p. 40.

does the stipulation specify any particular location on the industrial tract to which Gill was to move and deposit the crushed stone referred to in paragraph 4.

In any event, it was also error for the common pleas court not to confine itself to the express language of paragraph 4, given its description thereof as "explicit and unambiguous," slip op. at 1, which description, in our opinion, is accurate, particularly when paragraphs 4 and 5 are read together. Accordingly, the intention of the parties here must be ascertained solely from the express language of the stipulation. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973).

At oral argument, the Township agreed, and counsel for Gill did not disagree, that paragraph 5, previously quoted, could be used to construe the spirit of the stipulation. From our reading of this paragraph, it appears clear that the Township was required to discuss with Gill the issue of *future* industrial use of the residential tract.

Neither party contests, nor, in our opinion, could it reasonably be contested, that the hauling, and depositing, of crushed stone by dump truck is an industrial use. Likewise significant is the conspicuous absence of an exception clause in paragraph 5, such as those contained in paragraphs 3 and 4.

It is readily apparent that the parties, pursuant to paragraph 5, intended to discuss the issue of future industrial use of the residential tract and attempt to reach a mutually satisfactory agreement regarding *all future* industrial use thereof, including, of course, the hauling, and depositing, of crushed stone, without exception. To permit Gill's *present* encroachment upon the residential tract, in the absence of an agreement to do so entered into by the parties subsequent to the execution, and court approval, of the stipulation, would allow Gill to circumvent paragraph 5, thereby rendering it ineffective.

With this in mind, it would be unreasonable to interpret paragraph 4 as allowing Gill the present industrial use it is

making of a portion of the residential tract, despite the language therein excepting "truck traffic required to move stored product." In construing the stipulation in its entirety and in giving effect to each and every part of it, as we must, with particular focus on the provisions bearing directly on the issue before us, we are led to the inescapable conclusion that the initial provision of paragraph 4 requires Gill to remove all stored stone from the residential tract with the final provision thereof specifying the manner in which to effectuate such removal.[10]

In furtherance of this interpretation, apart from the intention of the parties as recorded in paragraph 5, we note that paragraph 4 allows truck traffic onto the residential tract for the sole purpose of moving stored product; not for the dual purpose of moving and depositing it. Likewise, the dispute, which the stipulation was designed to resolve, arose from the spillage of industrial activity onto the residential tract, including, of course, the storage, and hauling, of crushed stone as well as the depositing thereof which undoubtedly involved encroachment upon the residential tract by Gill's dump trucks. It would be unreasonable to conclude that the Township, by agreeing to the stipulation, compromised its initial position to prevent the spillage of the above-noted industrial activity onto the residential tract, given the breadth of, and obvious absence of an exception clause in, paragraph 5, which provides only for the possibility of subsequent future compromise.

Furthermore, the only crushed stones (stored product) in dispute when the stipulation was executed were those stored on the residential tract. It would, again, be unreasonable to conclude, particularly in light of our discussion in

10. In response to what we believe to be undue emphasis placed on paragraph 4's use of "different" phrases, namely, *"remove* stored stone" and *"move* stored product," by both Gill and the common pleas court, as evidenced in Gill's brief and the hearing transcript, we note the following from Webster's New World Dictionary of the American Language 963 (College ed. 1962): "SYN.—move, the broadest in scope of these terms, means merely to change from one place or position to another ...; remove stresses the departure of the thing moved from its original ... place or position ..."

the preceding paragraph, that the stipulation, specifically, paragraph 4 thereof, in resolving the dispute arising from the presence of some crushed stones on the *residential* tract, was intended to include the current encroachment involved in the unloading of stone obtained from a quarry pit located on the industrial tract and never stored on the residential tract.

To construe paragraph 4 as the common pleas court did would require us to view this paragraph in a vacuum without reference to the other paragraphs of the stipulation, particularly paragraph 5. This, we cannot, and will not, do. *J. McShain, Inc.*

For the foregoing reasons, we will reverse the order of the common pleas court.

### ORDER

AND NOW, this 19th day of February, 1992, the order of the Court of Common Pleas of Montgomery County, dated March 27, 1991, at No. 84–09257, is hereby reversed.