IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gravel Hill Enterprises, Inc.              :
                                           :    No.  2619 C.D. 2015
                        v.                 :
                                           :    Argued:  September 13, 2017
Lower Mount Bethel Township                :
Zoning Hearing Board, Lower Mount          :
Bethel Township, William S. Buehler,       :
Catherine S. Buehler, Gus Tishuk,          :
and Arlene Tishuk                          :
                                           :
Appeal of:  William S. Buehler,            :
Catherine S. Buehler, Gus Tishuk,          :
and Arlene Tishuk                          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY
JUDGE McCULLOUGH                              FILED:  October 30, 2017


William Buehler, Catherine S. Buehler, Gus Tishuk, and Arlene Tishuk

(Intervenors)[1] appeal from the November 20, 2015 order of the Court of Common Pleas

of Northampton County (trial court), which approved and adopted a land use settlement

---

[1] Intervenors are residential property owners who live near the property that is the subject of
this litigation.

agreement between Lower Mount Bethel Township (Township) and Gravel Hill Enterprises, Inc. (Gravel Hill).

**Facts and Procedural History**

Gravel Hill purchased land located at 10143 Gravel Hill Road, Bangor, Lower Mount Bethel Township, Northampton County, Pennsylvania (the Property) at a Federal Marshal's sale in 2008 after the previous owner defaulted on a federal loan. The Property is approximately 126 acres, and approximately 55.5 acres are covered with piles of stumps and other wood-waste debris, including some materials that would be considered hazardous waste. On or about September 3, 2014, Gravel Hill filed an application with the Township Zoning Hearing Board (ZHB), seeking a variance to permit the operation of a stump shredder and grinder to produce mulch and top soil. At the time of the application, the Property was subject to a Department of Environmental Protection (DEP) order issued December 31, 1999, requiring the Property's previous owner to, *inter alia*, cease the transportation, dumping, disposal, and burning of debris on the Property and remove all debris from the Property at a rate of 4,000 cubic yards per week. (Reproduced Record (R.R.) at 138a-49a.)

The Property's previous owner operated a stump grinding business and had initially received a variance permitting the use of the Property for the same. The variance was subsequently vacated; however, the previous owner continued to operate the business for a number of years. During the unauthorized operation, the previous owner received a substantial amount of material for disposal, but very little material was processed and manufactured to product. Moreover, a number of fires occurred on the Property because of the large amount of material stored thereon. The Property is

2

located in the Township's Agricultural Zoning District, which does not permit the proposed use.

Over the course of three hearings before the ZHB, Gravel Hill and the Township presented testimony and other evidence.[2] Intervenors and several other neighboring property owners appeared at the hearings to oppose Gravel Hill's application for a variance, citing concerns regarding truck traffic, noise, declining property values, and other problems that existed under the Property's previous owner. The ZHB denied Gravel Hill's application, reasoning that the proposed use would be detrimental to the public welfare, have an adverse impact on the essential character of the neighborhood, and did not constitute the minimum variance that would afford relief.

On December 15, 2014, Gravel Hill filed an appeal with the trial court and, on December 23, 2014, the Township filed a notice of intervention. After oral argument was conducted on May 26, 2015, the parties consented to the trial court delaying issuance of a decision to allow the parties to engage in settlement discussions. The trial court held settlement conferences on June 25, 2015, and October 1, 2015. In the meantime, Intervenors attended meetings of the Township's Board of Supervisors (Board) on August 3, 2015, and August 17, 2015, where attendees were advised that an appeal from the ZHB's decision was pending and settlement negotiations with Gravel Hill were ongoing. According to Intervenors, statements made at these meetings alerted them to the possibility that the Township could change its position during the negotiations and agree to conditions regarding the use of the Property that they considered unacceptable. (R.R. at 366a-67a, 559a, 1190a-91a.)

---

[2] The hearings occurred on September 17, 2014, October 1, 2014, and October 7, 2014. (R.R. at 31a-32a.)

3

On September 8, 2015, Intervenors filed a petition to intervene with the trial court. Gravel Hill filed an answer opposing Intervenors' petition, asserting that their petition was untimely because it was filed approximately nine months after the appeal was filed, Intervenors' interests were adequately represented by the Township, and granting Intervenors' petition would unduly delay resolution of the matter. The trial court scheduled a hearing on Intervenors' petition for October 30, 2015.

At the hearing, Gary Asteak, counsel for Gravel Hill, advised the trial court that it had generated a draft settlement agreement (the settlement agreement) with the Township pending official Township approval at a public meeting. Additionally, the parties requested a brief conference with Intervenors' counsel to discuss Intervenors' petition to intervene. After the conference, the parties advised the trial court that they had reached an agreement (the stipulation) regarding Intervenors' petition. Specifically, the parties articulated their stipulation on the record as follows:

> MR. ASTEAK: Your honor, we've reached an agreement, I believe. And this is what we submit to the Court. Gravel Hill withdraws its objection to the petition for intervention.
>
> Gravel Hill shall provide the intervenors forthwith with a copy of the proposed -- the draft settlement agreement and will provide or share a copy with the Court if the Court wishes.
>
> The parties agree that as a matter of law, the Court would be empowered to approve or reject any settlement agreement notwithstanding any positions taken by the intervenors. And the intervenors will be given an opportunity to provide comment on the settlement agreement.
>
> THE COURT: Is that it?
>
> MR. ASTEAK: That's it.

THE COURT:  What do you mean, the Court can approve or reject the settlement notwithstanding objections from the intervenors?

MR. ASTEAK:  Means that the intervenors do not have veto power over the settlement agreement.

THE COURT:  Really?

MR. C. ELLIOTT:  Yes.

MR. ASTEAK:  They're empowered to provide the Court with whatever comment they wish with regard to the agreement itself.  That is our understanding.

*    *    *

THE COURT:  Mr. Elliott and Mr. Elliott,[3] you heard everything that Mr. Asteak has placed on the record.  So just for my own understanding, the objection to the petition to intervene is withdrawn.  So I'm going to grant the petition to intervene.  That is the number one first thing.

MR. ASTEAK:  That's correct.

MR. C. ELLIOTT:  That's our understanding, Your Honor, if the township votes.

THE COURT:  If the township votes on Monday to approve the settlement, even if your clients oppose it, I can approve or reject the settlement and bind your clients; is that correct?

MR. C. ELLIOTT: Yes, Your Honor.  It's our understanding we will be able to both participate in the public hearing process before the township but also to make our views known to the Court.  Under the stipulation, the Court has the authority to either accept or reject the agreement.  But I think at the bottom, we would need to sway the Court that the agreement should not be approved for whatever reasons we would articulate.  Ultimately, the Court would have the

---

[3] Intervenors were represented before the trial court by two attorneys both with the surname Elliott.

5

authority to enter the agreement after considering all the views of all the parties.

(R.R. at 547a-49a.)

Accordingly, by order dated October 30, 2015, the trial court granted Intervenors' petition to intervene and directed the parties to file a brief regarding the underlying appeal on or before November 6, 2015. (R.R. at 553a-54a.)

On November 2, 2015, the Township held a public meeting where it discussed the appeal and proposed settlement agreement. At the meeting, copies of the settlement agreement were made available to the public, and the Township Solicitor provided a summary of the same and outlined the Township's rationale for considering settlement. Public comment on the settlement agreement occurred for approximately two-and-one-half hours wherein members of the public, including certain Intervenors, provided comments. Ultimately, the Township voted 3-2 to approve the settlement agreement subject to the Township Solicitor's satisfaction with the submitted exhibits, execution by Gravel Hill, and the trial court's approval. (R.R. at 561a.)

On November 6, 2015, Intervenors filed written comments to the settlement agreement with the trial court and, based on their comments, some changes were made to the settlement agreement that required approval by the Board. A vote on the changes was scheduled for the next public meeting on November 16, 2015.[4]

On November 9, 2015, the trial court held oral argument and advised Intervenors that it would allow them to provide comment and objections to the settlement agreement. Intervenors argued that the settlement agreement did not adequately address the clean-up of the Property; the amount of authorized truck traffic was too high and the settlement agreement did not contain adequate mechanisms to

---

[4] Gravel Hill Farms Organic Top Soil, Inc., an entity related to Gravel Hill, purchased parcels near the Property on March 31, 2015. These parcels were predominantly the subject of Intervenors' November 6, 2015 comments. (R.R. at 478a-79a, 487a-90a, 603a.)

6

monitor the same; the agreed-upon decibel limit was too high; the settlement agreement lacked sufficient groundwater monitoring; the termination date for activities on the Property was unreasonable; the settlement agreement failed to adequately address the use of adjacent property in another township; and no bond was required to assure Gravel Hill sufficiently remedied the Property. In response, Gravel Hill argued that the issues Intervenors raised had been considered, negotiated, and addressed in the settlement agreement. At the close of argument, the trial court indicated that Intervenors still had an opportunity to submit comments to the Township and stated that it would not make a decision regarding the settlement agreement until after the Board's November 16, 2015 meeting. (R.R. at 822a-23a, 827a-54a.)

On November 16, 2015, the Board held a public meeting where it discussed the revised settlement agreement. At the meeting, the Board heard public comment for approximately two hours, including additional comments from Intervenors opposing the settlement agreement. Following public comment, the Board voted 3-1 to approve the revised settlement agreement subject to Gravel Hill's execution of the same, execution of a limited consent and joinder by Gravel Hill Farms Organic Top Soil, Inc., and the trial court's approval. (R.R. at 562a-63a, 636a.)

On November 20, 2015, Gravel Hill and the Township filed a joint motion for approval of the settlement agreement with the trial court. The same day, Intervenors filed a response to the joint motion, essentially reiterating the objections raised in their comments to the settlement agreement and requesting that the trial court reject the same. Specifically, Intervenors argued that the settlement agreement: did not adequately address clean-up of the Property; requested approval by court order but authorized the parties to subsequently modify the same without judicial approval; authorized and regulated operations outside of the Township's boundaries and

7

jurisdiction; and created a potentially irreconcilable conflict between Gravel Hill's obligations under the settlement agreement and its obligations pursuant to DEP's orders. (R.R. at 682a-89a.)

By order dated November 20, 2015, the trial court approved the settlement agreement and adopted it as an order. (R.R. at 751a-53a.) On December 17, 2015, Intervenors filed an appeal to this Court.

On appeal,[5] Intervenors argue that the trial court abused its discretion in approving the settlement agreement because it: improperly rezoned property from agricultural to industrial; lacked jurisdiction over the properties located outside of the Township; improperly shifted the burden to Intervenors rather than the proponents of the joint motion to approve the settlement agreement; failed to require clean-up of the Property; and improperly permitted future amendment of the settlement agreement without court approval.

Conversely, the Township argues that Intervenors waived their right to appeal pursuant to the stipulation. The Township also asserts that the trial court's decision was proper because it complied with the procedures enumerated in the stipulation, considered all the parties' views, and Intervenors failed to persuade the trial court that the settlement agreement should not be approved. According to the Township, the trial court properly exercised authority over all aspects of the settlement agreement, including those parcels located in an adjacent municipality, and acted within its authority to approve the settlement agreement notwithstanding the parties' ability to amend the same without judicial approval.

---

[5] This Court reviews a trial court's acceptance or rejection of a settlement proposal for abuse of discretion. *BPG Real Estate Investors-Straw Party II, L.P. v. Board of Supervisors of Newtown Township*, 990 A.2d 140, 145 (Pa. Cmwlth. 2010).

## Discussion

## I. Waiver

Initially, we address whether Intervenors waived their right to appeal by entering into the stipulation.

This Court has held that "a valid stipulation becomes the law of the case." *East Norriton Township v. Gill Quarries, Inc.*, 604 A.2d 763, 764 (Pa. Cmwlth. 1992) (internal quotation marks omitted). We have also stated:

> The Pennsylvania rule on stipulations is long-settled: parties may bind themselves, even by a statement made in court, on matters relating to individual rights and obligations, so long as their stipulations *do not affect the court's jurisdiction or due order of business*. . . .
>
> The Courts employ a contracts-law analysis to interpret stipulations, so that the intent of the parties is controlling. . . . The language of a stipulation, like that of a contract, is construed against the drafter. . . . The court will hold a party bound to his stipulation: concessions made in stipulations are judicial admissions, and accordingly may not later in the proceeding be contradicted by the party who made them. . . .

*Id*. (quoting *Tyler v. King*, 496 A.2d 16, 21 (Pa. Super. 1985)) (emphasis added) (internal footnote omitted). Regarding the interpretation of a stipulation, we have noted that:

> A court cannot disregard a provision in a [stipulation] if a reasonable meaning can be ascertained therefrom. In construing a [stipulation,] each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.

*Id*. (quoting *McShain v. General State Authority*, 307 A.2d 469, 472 (Pa. Cmwlth. 1973)). Moreover, "[t]he court will not extend the language by implication *or enlarge*

9

*the meaning of terms* beyond what is expressed." *Cobbs v. Allied Chemical Corporation*, 661 A.2d 1375, 1377 (Pa. Super. 1995) (emphasis added).

Intervenors argue that the stipulation "did not mention, refer to, discuss, or expressly or impliedly implicate the right of appeal" and, therefore, Intervenors' right to appeal was not waived. (Intervenors' brief at 22.) Intervenors also note that the Pennsylvania Constitution[6] confers the right to appeal and assert that waiver of that right cannot be presumed where the record is silent regarding the same. Moreover, according to Intervenors, the courts will indulge every reasonable presumption against waiver of a fundamental right.

Conversely, the Township argues that, by entering into the stipulation, Intervenors relinquished their right to veto the settlement agreement, agreed to authorize the trial court to accept or reject the settlement agreement, and agreed to be bound by the trial court's decision. According to the Township, to permit Intervenors to appeal the trial court's decision would wrongly deprive Gravel Hill of its ability to oppose Intervenors' petition to intervene, which was exceedingly untimely.

In *Cobbs*, several defendants executed a stipulation with the plaintiff, agreeing that "if the liability phase of the case would have proceeded, it would have been determined that the asbestos-containing products, manufactured by [the defendants], were all a substantial factor and cause of decedent's injuries, disease, damages, and death." 661 A.2d at 1377.

On appeal, the appellee-plaintiff argued, *inter alia*, that the stipulation constituted a waiver of rights to post-trial relief. The Superior Court rejected that

---

[6] Specifically, Article 5, Section 9 of the Pennsylvania Constitution states that "[t]here shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court . . . ." PA. CONST. art. 5, §9.

argument and concluded that the stipulation only affected the issue of causation, reasoning that:

> After reviewing the stipulation, we conclude, from its clear and unambiguous language, that it was limited to the narrow issue of legal causation. At no point were Owens or any other defendants' rights to post-trial relief discussed, mentioned or otherwise implicated. *Examining the stipulation on its face, and narrowly construing its terms*, we can only conclude that Owens' rights to post-trial relief were unaffected by the stipulation and remained intact.

*Id*. at 1378 (emphasis added) (internal footnotes omitted).

Here, the parties agreed that "the [trial court] would be empowered to approve or reject any settlement agreement notwithstanding any positions taken by [Intervenors]" and that Intervenors did "not have veto power over the settlement agreement." (R.R. at 547a-48a.) Notably absent from the stipulation was any discussion regarding the parties' appeal rights. Essentially, Intervenors agreed that the trial court was authorized to decide this matter and its decision was binding on the parties. This is a matter of law. However, they did not agree to forfeit their rights to appeal that decision. We find the *Cobbs* decision persuasive in that, in the absence of any discussion of appeal rights on the face of the stipulation, we will not read a waiver into the same. 661 A.2d at 1377 ("The court will not extend the language by implication or enlarge the meaning of terms beyond what is expressed.").

Therefore, examining the stipulation on its face and construing the terms narrowly, we conclude that Intervenors did not waive their right to appeal by entering into the stipulation, and we will continue to the merits of the present appeal.

## II. Due Process

Throughout their brief to this Court, and before the trial court, Intervenors have alleged a deprivation of due process during the proceedings below. However, a review of the record below belies this allegation. In the stipulation, the parties addressed, *inter alia*, the procedure that the trial court would utilize to review the settlement agreement executed between Gravel Hill and the Township. As noted above, the stipulation provided that: (1) Intervenors would be given an opportunity to provide comment on the settlement agreement by participating in the process before the Township and by making their views known before the trial court; (2) Intervenors agreed to utilize the previously scheduled November 9, 2015 argument as a time to communicate to the trial court by written submission and oral presentation, if they felt the latter was necessary; (3) Intervenors would need to sway the trial court that any settlement agreement should not be approved; and (4) the trial court would be empowered to approve or reject any settlement agreement notwithstanding Intervenors' position.

During an extended colloquy with the trial court, counsel for Intervenors repeatedly acknowledged and confirmed the terms of the stipulation discussed above. A review of the record reveals that the trial court adhered to the procedure set forth above. Both before the Township and the trial court, Intervenors were provided with ample opportunity for their objections to the proposed settlement agreement to be heard. More specifically, Intervenors appeared at multiple Township meetings to present their views in opposition to the settlement agreement. Intervenors also submitted written comment to the trial court on November 6, 2015, and presented oral argument before the trial court on November 9, 2015.

12

When asked by the trial court whether Intervenors wished to provide any testimony, counsel responded, "You know, it's honestly difficult for me to believe that additional testimony, beyond the legal – beyond the comments and objections that we've made is necessary." (R.R. at 825a.) The trial court then proceeded to allow counsel for Intervenors to present extensive argument regarding their objections to the settlement agreement, so much so that the trial court advised counsel that he could continue to present Intervenors' objections from counsel's table instead of standing. *See* R.R. at 832a. After counsel for Gravel Hill and the Township had an opportunity to respond to Intervenors' objections, and before argument concluded, the trial court ensured that Intervenors had sufficient time to present their concerns, asking counsel for Intervenors if he felt he "had an unlimited opportunity to tell the Court whatever you wanted with respect to your position on behalf of [Intervenors]." (R.R. at 851a). Counsel responded that he had "[u]nlimited time, yes." *Id.*

In the course of this argument, Intervenors contend that the trial court improperly shifted the burden of proof from Gravel Hill and the Township, the proponents of the settlement agreement, to them. However, in the stipulation, Intervenors expressly agreed that it was their onus to sway the trial court that the settlement agreement should not be approved. In addition, Intervenors fail to cite any authority to support their assertion that Gravel Hill and the Township bore the burden of proof and persuasion on the settlement agreement. Instead, Intervenors point to the following passage from *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014), for support:

> The determination of whether such a shift [of the burden onto a defendant] is suitable rests . . . primarily on considerations of whether the shift vindicates the public policy at issue. In addition, we consider difficulties of adducing evidence to prove a negative, the parties' relative access to evidence, and whether placing the burden of proof on one party is necessary to help enforce a further right, constitutional or otherwise.

13

*Id.* at 409 (citations omitted). However, Intervenors' citation to *Tincher* is misplaced because that case dealt with the shifting burden of proof in a strict liability case involving defective products that included no agreement, like the stipulation at issue here, as to the burden of proof. *Tincher* also involved consideration of the difficulties for a defendant in such a case of adducing evidence to prove a negative and the parties' relative access to evidence, neither of which are relevant considerations herein. Intervenors also attempted to compare the joint motion of Gravel Hill and the Township for approval of the settlement agreement to a motion for summary judgment, wherein the burden rests with the moving party. However, the procedure in such a case is factually distinguishable from the procedure relating to approval of a settlement agreement in a land use appeal. Moreover, Intervenors appear to ignore that the trial court had before it the complete record of the proceedings before the ZHB and the Board, which included testimony from several of the Intervenors.

In sum, Intervenors had a full and fair opportunity to present their comments and objections both before the Board and the trial court, and we see no deprivation of their right to due process in the proceedings below.

### III.  Trial Court's Jurisdiction

Intervenors further argue that the trial court erred when it exercised jurisdiction over properties that were not the subject of the underlying litigation before the ZHB. According to Intervenors, our decision in *BPG Real Estate Investors-Straw Party II, L.P. v. Board of Supervisors of Newtown Township*, 990 A.2d 140 (Pa. Cmwlth. 2010), mandates that a trial court's approval of a settlement agreement incorporating property that was not the subject of the underlying litigation constitutes an abuse of discretion.

14

Conversely, the Township argues that the modifications to the settlement agreement that implicated properties outside of the Township's boundaries were made at Intervenors' request. The Township also avers that *BPG* is distinguishable from the present matter because, here, the settlement agreement does not authorize the development of properties outside of the Township's boundaries; rather, the owner of the adjacent property merely agreed not to conduct certain activities on his land, which Pennsylvania law authorizes a landowner to do.

In *BPG*, we stated that:

> The problem here, however, is that the trial court approved a Settlement Agreement that includes a large amount of land not at issue in BPG-2's conditional use request and not at issue in the initial land use appeal and mandamus action. Through its complaint in mandamus and its notice of land use appeal, BPG-2 sought approval of its proposed 130,000 square-foot office building on a 51-acre portion of the subject properties. However, the Settlement Agreement contemplates development of the entire 219-acre subject properties. In approving the Settlement Agreement, which allows for development of a far greater portion of the subject properties than that at issue in the underlying litigation, we believe the trial court was improperly invited beyond its statutory scope of review.
>
> Section 1001-A of the MPC[7] (Land use appeals) allows for appeal to a common pleas court, and it provides: "The procedures set forth in this article shall constitute the exclusive method for securing review of any decision rendered pursuant to Article IX or deemed to have been made under this act." 53 P.S. § 11001-A, added by the Act of December 21, 1988, P.L. 1329. Therefore, the authority of the trial court in land use appeals is linked by statute to review of a decision rendered pursuant to Article IX of the MPC.

---

[7] MPC refers to the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

15

\*    \*    \*

> In sum, several provisions of the MPC circumscribe a trial court's authority in land use appeals to matters decided by the municipal body and described in the notice of appeal.

*BPG*, 990 A.2d at 148.

Here, the Property was the only land at issue in the underlying litigation before the ZHB. (R.R. at 31a.) Similarly, the Property was the only land identified in Gravel Hill's land use appeal to the trial court. Accordingly, we conclude that *BPG* controls and mandates that the trial court's approval of a settlement agreement, insofar as it incorporated land that was not the subject of the underlying litigation, constituted an abuse of discretion.[8]

## Conclusion

The plain terms of the parties' stipulation agreement indicate that Intervenors did not waive their right to appeal. Additionally, the record establishes that Intervenors were not deprived of due process in the proceedings before the Board or the trial court. To the contrary, Intervenors agreed by stipulation to the procedure to be utilized by the trial court and this procedure was strictly followed. Intervenors had a full and fair opportunity to voice their concerns/objections to the settlement agreement between Gravel Hill and the Township. However, consistent with *BPG*, the trial court abused its discretion insofar as it approved the settlement agreement incorporating land that was not the subject of the underlying litigation.

---

[8] Contrary to the Township's averment, our holding in *BPG* was not confined to the *development* of property not at issue in the underlying litigation. Rather, the MPC circumscribes the trial court's authority "to *matters* decided by the municipal body and described in the notice of appeal." 990 A.2d at 148 (emphasis added).

16

Accordingly, the trial court's order is affirmed in part and reversed in part, consistent with this opinion.[9],[10]

_____
PATRICIA A. McCULLOUGH, Judge

---

[9] Before the trial court and in their brief to this Court, Intervenors alleged that the settlement agreement effectively rezoned the property and was more akin to improper contract zoning. However, during argument before this Court, counsel for Intervenors stated that the execution of the settlement agreement effectively mooted this issue, that this was not a contract zoning case, and that the settlement agreement did not go that far herein.

[10] Intervenors also argued that the trial court abused its discretion in approving the settlement agreement because it failed to require clean-up of the Property and permitted modification without court approval. Regarding the former, the record reveals that clean-up of the site was the predicate for the zoning relief and a review of the agreement itself reveals that Gravel Hill must remain in compliance with a consent order previously issued by the Department of Environmental Protection (DEP) relating to the property. Additionally, the settlement agreement includes provisions relating to well monitoring, maintenance of records, proper permitting from DEP, and site visits by various township officials. (Settlement Agreement, ¶5, R.R. at 614a-17a.) Regarding the latter, Intervenors argue that Gravel Hill and the Township would be free to re-negotiate the terms of the agreement without court review and without an opportunity for them to be heard. However, the terms of the settlement agreement reflect that any modification must be put forth in writing and requires approval by the Township at a public meeting, wherein Intervenors would have an opportunity to voice further concerns. (Settlement Agreement, ¶14(J), R.R. at 629a.) Hence, the trial court did not abuse its discretion in approving the settlement agreement in its current form.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gravel Hill Enterprises, Inc.      :
     :    No. 2619 C.D. 2015
v.      :
     :
Lower Mount Bethel Township      :
Zoning Hearing Board, Lower Mount      :
Bethel Township, William S. Buehler,      :
Catherine S. Buehler, Gus Tishuk,      :
and Arlene Tishuk      :
     :
Appeal of: William S. Buehler,      :
Catherine S. Buehler, Gus Tishuk,      :
and Arlene Tishuk      :

## _ORDER_

AND NOW, this 30th day of October, 2017, the November 20, 2015 order of the Court of Common Pleas of Northampton County (trial court), insofar as it approved a settlement agreement between Gravel Hill Enterprises, Inc., and Lower Mount Bethel Township, that incorporated land that was not the subject of the underlying litigation, is reversed. In all other respects, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gravel Hill Enterprises, Inc.      :
     :
           v.            :    No. 2619 C.D. 2015
     :    Argued: September 13, 2017
Lower Mount Bethel Township      :
Zoning Hearing Board, Lower Mount      :
Bethel Township, William S. Buehler,      :
Catherine S. Buehler, Gus Tishuk,      :
and Arlene Tishuk      :
     :
Appeal of: William S. Buehler,      :
Catherine S. Buehler, Gus Tishuk,      :
and Arlene Tishuk      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

**DISSENTING OPINION**
**BY JUDGE BROBSON**                **FILED: October 30, 2017**

Because I believe that the Court of Common Pleas of Northampton County (trial court) did not err in approving the entirety of the parties' settlement agreement, which included concessions relating to nearby parcels of land outside of Lower Mount Bethel Township in an effort to address concerns of objectors to the variance application, I would affirm the trial court's November 20, 2015 Order *in toto*.

                              _____
                               P. KEVIN BROBSON, Judge

Judge Cosgrove joins in this dissent.